Points Decided.

(April 2, 1926.)

# THOMAS E. GORGES, Respondent, v. JENNIE F. GORGES, Appellant.

[245 Pac. 691.]

DIVORCE — GROUND OF INSANITY — NATURE OF DIVORCE ACTION — CONSTRUCTIVE SERVICE OF PROCESS—STATUTORY PROVISION FOR CONSTRUCTIVE SERVICE INVALID.

1. It is within power of legislature to pass laws authorizing courts to grant divorces.

2. Laws 1895, p. 11, re-enacted by Laws 1899, p. 232, and amended by Laws 1903, p. 332 (now C. S., secs. 7037–7041), is valid in so far as it grants right to divorce on ground of insanity.

3. Generally an action for divorce is a proceeding *in rem* or *quasi in rem;* marital status or relation itself being *res.*

4. Constructive service of process by publication in divorce action is generally recognized as valid.

5. Service of summons and complaint in divorce action, in case of nonresident insane defendant, on county attorney, and appointment of and service on guardian *ad litem,* required in accordance with C. S., secs. 7037–7041, is not valid constructive or substituted service of summons and does not constitute due process of law within Const., U. S., Amend. 14, sec. 1.

6. Under C. S., secs. 7038–7041, providing for divorce on ground of insanity, when construed together and harmonized with sections 6677, 6678, relating to service on nonresidents, appointment of guardian *ad litem* and service of summons and complaint on guardian and county attorney under section 7039, are necessary parts of procedure, but are additional to general requirements for service of process, and jurisdiction of action or parties under section 6681 is not complete until service is had in compliance with section 6677.

7. Where nonresident defendant, in divorce action on ground of insanity, had been confined in Rhode Island under Gen. Laws R. I. 1909, chap. 96, secs. 11 and 12, such confinement having been held by Rhode Island supreme court as legal restraint of liberty, commitment under such procedure rendered defendant duly and regularly confined within purview of C. S., sec. 7037, authorizing divorce from person confined in insane asylum in different state.

8. In action for divorce against nonresident insane defendant, admission of certified copies of certificates of examining physicians,

issued in conformity with statute of state where defendant is confined, is proper.

9. In action for divorce against nonresident on ground of insanity, failure of plaintiff to show affirmatively that he did not cause or bring about condition of defendant does not preclude relief, where essential elements had been established, since, even though it might properly be subject of defense, plaintiff is not required to anticipate it.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action for divorce. Judgment for Plaintiff. *Reversed and remanded.*

Laurel E. Elam and Reddoch & Hunter, for Appellant.

The court was without jurisdiction or authority to appoint a guardian *ad litem* before the suit was filed and directing service of summons upon said guardian and the county attorney, and by such act the court acquired no jurisdiction of the defendant or the subject of the action, when the defendant had no property in the state, and was a nonresident of the state at the time of the appointment. (Sess. Laws 1895, p. 11; 1903, p. 332; C. S., secs. 1190, 6639, 6640 and 7856-7859; *Bliss v. Bliss*, 133 Md. 61, 104 Atl. 467; *Beall v. Stokes*, 95 Ga. 357, 22 S. E. 637; *Federal Trust Co. v. Allen*, 110 Kan. 484, 204 Pac. 747; *In re Tottenham*, 2 Mylne & C. 39; Eng. Ch. 39, 40 Reprint, 556.)

C. S., sec. 7038, denies to an insane defendant due process of law in violation of both the state and federal constitutions. (*Bear Lake County v. Budge*, 9 Ida. 703, 108 Am.

Publisher's Note.

1. See 9 R. C. L. 245.
3. See 9 R. C. L. 247.
4. See 9 R. C. L. 410.

See Divorce, 19 C. J., sec. 24, p. 22, n. 95; sec. 59, p. 36, n. 60; sec. 239, p. 100, n. 72 New; sec. 248, p. 102, n. 3, 4, 5, 6; sec. 331, p. 125, n. 95; sec. 344, p. 131, n. 97.
Evidence, 22 C. J., sec. 937, p. 821, n. 88.
Statutes, 36 Cyc., p. 1149, n. 39.

St. 179, 75 Pac. 614; *Eagleson v. Rubin,* 16 Ida. 92, 100 Pac. 765.)

C. S., sec. 7037, denies to an insane defendant the equal protection of the law under the federal constitution. (*Truax v. Corrigan,* 257 U. S. 312, 42 Sup. Ct. 124, 66 L. ed. 254; *Pacific Coast Coal Co. v. District No. 10 United Mine Workers,* 122 Wash. 423, 210 Pac. 953; C. S., secs. 4635–4638.)

C. S., sec. 7038, wherein it provides for a special and different method of acquiring service than that obtaining in other cases violates the state constitution, which requires that all laws relating to the courts and procedure therein shall be general and uniform in their operation throughout the state. (Sec. 26, art. 5 of the constitution of Idaho; subd. 3, sec. 19, art. 3 of the constitution of Idaho; *Bear Lake County v. Budge, supra; People v. Johnson,* 285 Ill. 194, 120 N. E. 453; *Hoffman v. Paradis,* 259 Ill. 111, 102 N. E. 253; *Clowry v. Holmes,* 238 Ill. 557, 87 N. E. 303; *David v. Commercial Mutual Accident Co.,* 243 Ill. 43, 90 N. E. 285; *State v. Deming,* 98 Kan. 420, 158 Pac. 34; *Wallace v. Leiter,* 76 Ohio, 185, 81 N. E. 187; *Gerlach v. Moore,* 243 Pa. 603, 90 Atl. 399; *McClain v. Williams,* 11 S. D. 60, 75 N. W. 391, 43 L. R. A. 289; *City of Tulare v. Hevren,* 126 Cal. 226, 58 Pac. 530; *Gardner v. Superior Court,* 19 Cal. App. 548, 126 Pac. 501; *In re McCormick's Estate,* 72 Or. 608, 143 Pac. 915, 144 Pac. 425; *People v. Budd,* 24 Cal. App. 176, 140 Pac. 714; *Schafer v. Ritchie, Dist. Judge,* 49 Utah, 111, 162 Pac. 618.)

The evidence fails to show that the defendant was duly and regularly confined in an insane asylum for a period of six years, or any number of years prior to the commencement of the action. (Rev. Stats. of Idaho, secs. 769–777; C. S., secs. 1177–1185; Sess. Laws 1895, p. 11.)

The evidence on behalf of the plaintiff fails to negative the fact that he himself did not cause or produce the insanity. He does not come into court with clean hands, nor does he offer to do equity. (1 Med. Jur. (Wharton & Stilles), secs. 594, 595, 597; 1 Med. Jur. (Clevenger), p. 221,

vol. 2, p. 966, 967; 3 Med. Jur. (Whitthause & Becker), p. 173, sec. 48; chap. 96, p. 368, Gen. Law. (R. I.) 1909.)

E. C. Boom, for Respondent.

It is within the power of the legislature to authorize the courts to grant divorces for any cause which the legislature deems sufficient, and divorce proceedings are now universally recognized as being founded on statute and as being of statutory origin. (*Stewart v. Stewart*, 32 Ida. 180, 180 Pac. 165; *Hickman v. Hickman*, 1 Wash. 257, 22 Am. St. 148, 24 Pac. 445; *Hall v. Cartwright*, 18 La. Ann. 414; *Maslen v. Anderson*, 163 Mich. 477, 128 N. W. 723; *Rumping v. Rumping*, 36 Mont. 39, 91 Pac. 1057; *Aldrich v. Steen*, 71 Neb. 33, 98 N. W. 445, 100 N. W. 311; *Ackerman v. Ackerman*, 200 N. Y. 72, 93 N. E. 192; *Le Barron v. Le Barron*, 35 Vt. 365; *Bacon v. Bacon*, 43 Wis. 197; *State v. Grimm*, 239 Mo. 340, Ann. Cas. 1913B, 1188, 143 S. W. 450; *De Vall v. De Vall*, 57 Or. 128, 109 Pac. 755, 110 Pac. 705.)

An action for divorce is a proceeding *in rem*, in so far as it affects the marital status of the parties, and personal service is, therefore, not necessary. (*Anderson v. Anderson*, 53 Mo. App. 268; *Gibbs v. Gibbs*, 26 Utah, 382, 73 Pac. 641; *Wesner v. O'Brien*, 56 Kan. 724, 54 Am. St. 604, 44 Pac. 1090, 32 L. R. A. 289; *Rigney v. Rigney*, 127 N. Y. 408, 24 Am. St. 462, 28 N. E. 405; *In re Ellis' Estate*, 55 Minn. 401, 43 Am. St. 514, 56 N. W. 1056, 23 L. R. A. 287; *Cunningham v. Shanklin*, 60 Cal. 118–125; *McFarlane v. McFarlane*, 43 Or. 477, 73 Pac. 203, 75 Pac. 139; *Thompson v. Thompson*, 226 U. S. 551, 33 Sup. Ct. 129, 57 L. ed. 347; *Haddock v. Haddock*, 201 U. S. 562, 5 Ann. Cas. 1, 26 Sup. Ct. 525, 50 L. ed. 867.)

The right to constructive service in actions *in rem* exists as to nonresident insane persons, as well as infants. (*Bryan v. Kenneth*, 113 U. S. 179, 5 Sup. Ct. 407, 28 L. ed. 908.)

Jurisdiction may ordinarily be obtained over an insane person by the like process as if he were sane. But where a statute prescribes a particular manner of serving the summons upon one who is sued as an insane person, the service

must conform to the mode prescribed by statute. (*Wilson v. Wilson,* 95 Minn. 464, 104 N. W. 300.)

C. S., secs. 7037–7041, are in nowise violative of section 13, art. 1, of the Idaho constitution or of section 1 of the fourteenth amendment of the federal constitution, providing that no person shall be deprived of property without due process of law, nor denied the equal protection of the laws. (*Shepherd v. Ware,* 46 Minn. 174, 48 N. W. 773; Cooley's Const. Lim., p. 582; *Atherton v. Atherton,* 181 U. S. 155, 21 Sup. Ct. 544, 45 L. ed. 794; *Stephens v. Stephens,* 62 Tex. 337–339. )

. C. S., sec. 7038, is not violative of or in contravention of subd. 3 of sec. 19, art. 3, or of sec. 26, art. 5 of the constitution of Idaho. (*Deyoe v. Superior Court of Mendocino Co.,* 140 Cal. 476, 98 Am. St. 73, 74 Pac. 28; *Title & Document Rest Co. v. Kerrigan,* 150 Cal. 289, 119 Am. St. 199, 88 Pac. 356, 8 L. R. A., N. S., 682; *Anglo-Californian Bank v. Field,* 146 Cal. 644, 80 Pac. 1080; *People v. Central Pac. R. R. Co.,* 105 Cal. 576, 38 Pac. 905, 906; *Jones v. Power County,* 27 Ida. 656, 150 Pac. 35; *Boise Irr. & Land Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321.)

Confinement in an insane asylum of Rhode Island, under the provisions of secs. 11–14 of the General Laws of Rhode Island of 1909, constitutes "due and regular" confinement within the meaning of C. S., sec. 7037, and constitutes due process of law. (*In re Simon G. Crosswell,* 28 R. I. 137, 66 Atl. 55.)

The constitutionality of a statute which has been in operation and acted upon for nearly a quarter of a century without being questioned or attacked should be upheld. (*State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280.)

VARIAN, District Judge.—This is an action by the husband for divorce upon the ground of insanity. From a judgment granting the relief prayed for, defendant, by her guardian *ad litem,* appeals.

The complaint alleges the marriage of the parties at Attleboro, Massachusetts, on or about June 15, 1911; that plain-

tiff has been an actual resident of Ada county, where the action was commenced, for more than one year next preceding, and now is such resident; that defendant "has become, and is now, permanently and incurably insane; and that she has been, for more than six years next preceding the commencement of this action, and now is, duly and regularly confined in an insane asylum of the state of Rhode Island." The complaint then concludes with the usual prayer for divorce.

The record shows that the respondent had resided at Meridian, Ada county, Idaho, a little over sixteen months at the date of the trial; that the parties were married June 3, 1911, at the place alleged in the complaint; that shortly after the marriage, at Stoddard, New Hampshire, while on their honeymoon, defendant talked and acted in an irrational manner; that respondent took her to a physician at Keene, New Hampshire, who pronounced her insane; that appellant was then taken to Providence, Rhode Island, where an examination of her condition was made by two physicians, one of whom was her regular family physician, who pronounced her insane and certified that she should be placed in an institution for the insane; that appellant was committed to the Butler Hospital for the insane at Providence, Rhode Island, where she remained a year and was then paroled; that thereafter the parties lived together a little over three years, when appellant was readmitted to Butler Hospital on May 2, 1916, and transferred on August 8, 1917, to the State Hospital for Mental Diseases at Howard, Rhode Island, where she has been regularly confined ever since; that she is permanently and incurably insane.

On April 3, 1923, respondent presented to the trial court his verified petition and complaint. It appearing therefrom that a cause of action existed, the court appointed John R. Smead guardian *ad litem* of the defendant, and ordered said complaint to be filed. The court further ordered that summons and complaint be served upon the defendant by delivering a copy of each to said guardian *ad litem* and like copies to the county attorney of Ada county, Idaho. Sum-

mons and complaint were thereafter served in the manner ordered by the court and in no other manner. Thereafter the prosecuting attorney of Ada county and Messrs. Reddoch & Hunter, as *amici curiae,* moved to set aside the appointment of the guardian *ad litem* and quash the service of summons and complaint, which was denied. The guardian *ad litem* then filed a demurrer which was overruled, and thereafter filed his answer alleging defendant's true name to be Jennie W. Gorges, admitting the marriage, but denying she is insane, or has been for six years preceding the bringing of the action, or is or has been for such time duly or regularly confined in an insane asylum of the state of Rhode Island.

Appellant makes nine assignments of error attacking the jurisdiction of the court and the constitutionality of the statute under which it is sought to maintain this action. It is contended that the trial court was without jurisdiction or authority to appoint a guardian *ad litem* before the suit was filed, and to direct service of summons upon the guardian and county attorney; that such service gave the court no jurisdiction of the nonresident defendant having no property in this state.

Sections 1, 2 and 3 of an act of the legislature approved by the Governor on February 4, 1895 (Sess. Laws 1895, p. 11), are as follows:

"Section 1. That in addition to the causes for divorce mentioned in section 2457 of the Revised Statutes of this state, a divorce may be granted when either husband or wife has become permanently insane. *Provided,* That no divorce shall be granted under the provisions of this act, unless such insane person shall have been duly and regularly confined in the insane asylum of this state, for at least six years next preceding the commencement of the action for divorce; nor, unless it shall appear to the court that such insanity is permanent and incurable. And *Provided further,* That no action shall be maintained under the provisions of this act, unless the plaintiff shall be an actual resident of

this state and shall have resided therein for six years next preceding the commencement of such action.

"Sec. 2. The district courts of the several judicial districts of this state shall have jurisdiction of actions for divorce under the provisions of this act; and such action shall be brought in the county of this state in which the plaintiff resides. And the court in which such action is about to be commenced shall, upon the filing by the plaintiff of a petition duly verified showing that a cause of action exists under this act, appoint some person to act as guardian of such insane person in such action, and the summons and complaint in such action shall be served upon the defendant by delivering a copy of such summons and complaint to such guardian and by delivering a copy thereof to the district attorney of the district in which such action is brought.

"Sec. 3. It shall be the duty of the district attorney upon whom the summons and complaint in such action shall be served, to appear for such defendant in such action and defend the same, and no divorce shall be granted under the provisions of this act except in the presence of the district attorney."

In 1899 the legislature re-enacted the act of 1895, except that in lieu of "district attorney," the act of 1899 uses the term "county attorney." (Sess. Laws 1899, p. 232.)

By an act entitled, "An Act to Amend Section One of an Act Entitled 'An Act Authorizing Divorces to be Granted in Cases of Insanity and Regulating the Duties of the District Attorney Therein,'" the legislature in 1903 (Sess. Laws 1903, p. 332) amended section 1 of the act of 1899 (and 1895) to read:

"That in addition to the causes for divorce mentioned in Section 2457 of the Revised Statutes of the State of Idaho, a divorce may be granted when either husband or wife has become permanently insane: *Provided,* That no divorce shall be granted under the provisions of this act, unless such insane person shall have been duly and regularly confined in the insane asylum of this State, or of a sister State or Territory, for at least six years next preceding the

commencement of the action for divorce, nor unless it shall appear to the court that such insanity is permanent and incurable—And *Provided further,* That no action shall be maintained under the provisions of this act, unless the plaintiff shall be an actual resident of this State and shall have resided therein for one year next preceding the commencement of such action.''

Section 1 of the act of 1895, as re-enacted in 1899 and amended in 1903, is incorporated in the Compiled Statutes as section 7037. Sections 2, 3, 4 and 5 of the act of 1895 as re-enacted in 1899, became sections 7038, 7039, 7040 and 7041, respectively, of the Compiled Statutes, and article 8 of chapter 258, title 55, thereof. The code commissioner has substituted ''chapter'' for ''act,'' and ''county'' for ''district,'' as they appear in the act of 1899, in the Compiled Statutes.

[1] It is within the power of the legislature to pass laws authorizing the courts to grant divorces. (*Stewart v. Stewart,* 32 Ida. 180, 180 Pac. 165.) [2] It must follow that the legislature has power to authorize the granting of divorces for insanity, and the act under consideration is valid in so far as it grants the right to a divorce upon that ground.

[3] It is generally held that an action for divorce is a proceeding *in rem* or *quasi in rem.* (19 C. J., p. 22, sec. 24, and cases cited.) Under this view, the marital status or relation is itself the *res.* (*Anderson v. Anderson,* 55 Mo. App. 268.) [4] Courts generally recognize as valid constructive service of process by publication in divorce actions.

''Actual notice to a nonresident defendant in a divorce suit is not a prerequisite to the exercise of jurisdiction, and in nearly all the states statutes exist which permit of a constructive service of process by publication where defendant is without the state. Strict compliance with these statutes is necessary to give the court jurisdiction, but where jurisdiction is acquired, the decree so far as the marriage status is concerned is as binding, on the parties as in cases where the service of process is personal.'' (19 C. J., p. 102, sec. 248.)

We infer from an examination of the statute in question that, as originally enacted, it was intended to authorize divorce on the ground of insanity only when the insane spouse had been confined for a period of six years in an insane asylum *in Idaho.* (Sess. Laws of 1895 and 1899, *supra.*) There was no provision in the act of 1895 as re-enacted in 1899, authorizing the courts to grant divorces upon the ground of insanity where the insane spouse was confined outside the state of Idaho.

C. S., sec. 6676 provides that service of summons may be made by delivering a copy thereof. As to insane defendants, it reads:

"5. If against a person residing in this state who has been judicially declared to be of unsound mind, incapable of conducting his own affairs, or for whom a guardian has been appointed, to such person, also to his guardian."

Subdivision 7 of said section provides that in all other cases, the service shall be made by delivering a copy of the summons to the defendant personally.

C. S., sec. 6675, provides that a copy of the complaint must be served with a copy of the summons, unless two or more defendants are residents of the same county, when it is only necessary to serve the complaint upon one of them.

C. S., sec. 6677, provides that "When the person on whom the service is to be made resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state, or conceals himself to avoid the service of summons," service may be had by publication, or if the address of the defendant outside of the state is known, the court, or the clerk (under the 1925 amendment to this section: Sess. Laws 1925, c. 43, p. 60), "may make an order that personal service of the summons may be made outside of the state in lieu of such publication," on making the affidavit therein prescribed.

The act of February 4, 1895, is entitled, "An Act Authorizing Divorces to be Granted in Cases of Insanity, and Regulating the Duties of the District Attorney Therein." It would appear that the intention of the legislature was to

provide certain safeguards for the protection of insane defendants, and defendants proceeded against as insane defendants.

[5] The guardian *ad litem* represents the person of the nonresident insane defendant, not for the purpose of giving the court jurisdiction of the subject matter, or of the person of the defendant, on the theory of constructive service, but to aid and assist in properly safeguarding the interests of the incompetent defendant. The prosecuting or "county" attorney represents the state primarily to the end that the insane defendant may have any known defenses to the action properly interposed, and his rights jealously guarded and protected at each stage of the proceeding; in short, that a trial of the issues would be insured. These provisions of the statute were not intended to provide a different method of obtaining service of process on nonresident insane defendants in divorce actions, or to supersede the general statutes relating to service of process on nonresidents, but should be construed to be additions to the procedure in this class of cases. Service of copies of summons and complaint on the prosecuting or "county" attorney, and the appointment of, and service on, the guardian *ad litem,* operated to give these functionaries notice of the pendency of the proceeding. Such service, in the case of nonresident insane defendants, is not valid constructive or substituted service of summons, and does not constitute due process of law within the meaning of section 1 of the fourteenth amendment to the federal constitution.

[6] In actions against nonresident defendants for divorce on the ground of insanity, the sections of our statute providing for divorce upon such ground, and the procedure therein provided (C. S., secs. 7038, 7039, 7040 and 7041), should be construed together and harmonized with the general statutes relating to service of process upon nonresidents. (C. S., secs. 6677, 6678.) We therefore hold that the procedure providing for the appointment of a guardian *ad litem* in divorce actions against nonresident insane defendants, and service of the summons and complaint

upon said guardian and the "county" attorney, required by the provisions of C. S., sec. 7039, are valid and necessary parts of the procedure in such cases, but are additional to the general requirements for the service of process. Therefore, jurisdiction of the action, or of the parties, as contemplated by the provisions of C. S., sec. 6681, is not complete until service is had on the insane defendant in compliance with the requirements of C. S., sec. 6677.

[7]   The record shows that the defendant is confined in the State Hospital for Mental Diseases at Howard, Rhode Island, under and by virtue of the certificates of two physicians to the effect that she is insane and requires care and restraint in a hospital for the insane. Appellant contends that her detention is not "due and regular confinement within the meaning of the statutes of this state." The record shows that her confinement is authorized under General Laws of Rhode Island 1909, c. 96, secs. 11 and 12. In construing the same statute, as found in General Laws of Rhode Island 1896, c. 82, the supreme court of Rhode Island held that the procedure followed here constituted due process of law, and that an insane person so confined was legally restrained of his liberty. (*In re Petition of Simon G. Crosswell,* 28 R. I. 137, 13 Ann. Cas. 874, 66 Atl. 55.) The proceeding that resulted in the confinement of the defendant in Rhode Island, having been held to constitute due process of law by the highest tribunal of that state, we are constrained to hold that commitment of the defendant under said procedure rendered her "duly and regularly confined" in the Rhode Island asylum, within the purview of C. S., sec. 7037.

[8]   The admission in evidence, over objection by appellant, of certified copies of the certificates of the examining physicians is also assigned as error. These certificates appear to have been issued in conformity to the Rhode Island statute, and their admission in evidence was not error.

[9]   Subdivision (c) of the fifth assignment of error is predicated upon the fact that plaintiff failed to show affirmatively that he himself did not cause or bring about the condition of the defendant which is the basis of his right to

divorce.   The contention is based upon the maxims of equity, "He who seeks equity must do equity," and "He who comes into equity must come with clean hands," etc.   Plaintiff's right is founded upon a statute which authorizes relief when it appears that the defendant "has become permanently and incurably insane," and "shall have been duly and regularly confined in an insane asylum of this state, or of a sister state or territory, for at least six years next preceding the commencement of the action for divorce," and the plaintiff has been an actual resident of this state and resided therein for one year next preceding the commencement of such action.   When the plaintiff establishes these essential elements by a preponderance of the evidence, he is entitled to a decree, in the absence of any showing to the contrary.   The suggestion raised by this assignment might properly be the subject of defense, but plaintiff is not required to anticipate such defense.

The judgment is reversed, and the cause remanded with instructions that plaintiff be permitted to obtain service on the defendant, if he so desires, and a new trial then be had. Costs to appellant.

William A. Lee, C. J., and Wm. E. Lee and Taylor, JJ., concur.